UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN J. MILLMAN, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB, et al.,<br><br>Defendants. | Case No. 17-cv-04123-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**<br><br>Docket Nos. 36, 40 |

## I. INTRODUCTION

Plaintiffs Stephen and Lynda Millman (hereafter "Millmans") previously initiated a foreclosure-related action against Defendants Wilmington Savings Fund Society, FSB, and BSI Financial Services (collectively "Defendants") on December 30, 2016. *See Millman v. Wilmington Savings Fund Soc'y FSB*, No. C-16-7402-EMC (hereinafter "*Millman I*"). On March 30, 2017, the Millmans voluntarily dismissed their case (*Millman I*) without prejudice. *See Millman I* (Docket No. 47). On June 29, 2017, the Millmans initiated another foreclosure-related action in state court, obtained a temporary restraining order (TRO) and Defendants subsequently removed the action to this Court on July 20, 2017. *See* Docket No. 1. When the Millmans' TRO expired, the Defendants foreclosed the Millmans' real property and on December 27, 2017, the Millmans voluntarily dismissed the Defendants (without prejudice). *See* Docket No. 35.

Currently pending before the Court are two motions: (1) Defendants' motion for attorney's fees under Federal Rule of Civil Procedure 41(d), *see* Docket No. 36, and (2) the Millmans' motion for attorney's fees pursuant to Cal. Civ. Code § 2924.12. *See* Docket No. 40. Having reviewed the parties' submissions, the Court hereby **DENIES** both Defendants' motion for attorney's fees and the Millmans' motion for attorney's fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The complaint and judicially noticeable documents reflect as follows.

In November 2006, the Millmans borrowed more than $900,000 from Bank of America. The loan was secured by a deed of trust for certain real property located in San Ramon California. *See* Compl. ¶ 7; *see also* Docket No. 39 ("Defs.' RJN"), Exh. A (deed of trust). The deed of trust identified PRLAP, Inc. as the trustee for the deed of trust. *See* Defs.' RJN, Exh. A (Deed of Trust at 2).

In May 2014, Bank of America assigned the deed of trust to U.S. Bank N.A., as trustee for Prof-2013-S3 REMIC Trust III. *See* Defs.' RJN, Exh. B (assignment of deed of trust). Several months later, in December 2014, U.S. Bank N.A. (as trustee) assigned the deed of trust to one of the named defendants, *i.e.*, Wilmington Savings Fund Society, FSB. The assignment to Wilmington as solely as trustee for the PrimeStar-H Fund I Trust. *See* Defs.' RJN, Exh. C (assignment of deed of trust).

In July 2016, Wilmington (as trustee) replaced PRLAP, Inc. with the Law Offices of Les Zieve as trustee for the deed of trust. *See* RJN, Exh. E (substitution of trustee). A notice of default was then recorded on the San Ramon property. *See* Defs.' RJN, Exh. F (notice).

Subsequently, in December 2016, Wilmington, acting as trustee for the PrimeStar-H Fund I Trust, assigned the deed of trust to itself, acting as trustee for a different trust, *i.e.*, the Brougham Fund I Trust. *See* Defs.' RJN, Exh. D (assignment of deed of trust). Several days later, a notice of trustee's sale was recorded. The sale was scheduled for January 5, 2017. *See* RJN, Exh. G (notice).

A. *Millman I*

The notice of trustee's sale prompted the Millmans to file their first lawsuit on December 30, 2016. *See Millman v. Wilmington Savings Fund Soc'y FSB*, No. C-16-7402 EMC (hereinafter "*Millman I*") (Docket No. 1) (complaint). The Millmans sued both Wilmington as well as the other named defendant in the instant case, BSI Financial Services, the servicer of their loan. The Millmans challenged the validity of the deed of trust, claiming defective chain of title; they assert causes of action for (1) Attempted Wrongful Foreclosure under Cal. Civil Code §§ 2924(a)(6) and

2

2923.55; (2) Cancellation of Instruments under Cal. Civil Code § 3412; (3) Violation of the UCL, Cal. Bus. and Prof. Code § 17200 et seq.; (4) Declaratory Relief; and (5) Breach of Contract. *Id.* This Court granted the Millmans' request for a temporary restraining order ("TRO"), enjoining the trustee's sale. *See Millman I* (Docket No. 10) (order). But several weeks later, the Court denied the Millmans' motion for a preliminary injunction because they had failed to show a likelihood of success on the merits. The denial was without prejudice such that the Millmans were not barred from seeking injunctive relief in the future if they filed a second application for a loan modification. *See Millman I* (Docket No. 27) (Order at 4-5). Subsequently, the Millmans filed a second motion for a TRO to enjoin a trustee's sale scheduled for February 6, 2017. The Court denied the application as moot because the parties later represented to the Court that the foreclosure sale had been postponed. *See Millman I* (Docket No. 32) (Order at 1). Thereafter, Defendants filed a motion to dismiss, but that motion was never heard because, on March 30, 2017, the Millmans voluntarily dismissed their case (without prejudice). *See* Docket No. 47 (notice).

B.     The Instant Case (*Millman II*)

After dismissal of *Millman I*, on June 22, 2017, the Millmans filed a second loan modification application, asserting that they had a change in financial circumstances. *See* Compl. ¶ 12. A week later, the Millmans initiated the instant case in state court, seeking to stop a foreclosure sale that was scheduled for July 3, 2017. *See* Not. of Removal. ¶ 3. The Millmans alleged that (1) they were entitled to declaratory relief because Defendants were moving forward with the foreclosure sale despite a pending loan modification application, and (2) Defendants were violating California Civil Code § 2923.6 since they cannot conduct a trustee's sale while a complete loan modification application was pending. *See* Compl. at 8–9. The Millmans moved for a TRO in state court, and the state court granted that motion on June 30, 2017. The July 3 foreclosure sale was thus enjoined. *See* Not. of Removal, Exh. 3 (order). The state court also set a hearing for a preliminary injunction for August 2017, but that hearing never took place because, on July 20, 2017, Defendants removed the case to federal court. (Defendants were not served with the summons and complaint until after the granting of the TRO by the state court.) On August 7,

3

2017, the Defendants filed a motion to dismiss and on August 9, 2017, the Millmans filed a motion to remand. *See* Docket Nos. 8, 11. While these two motions were pending, Defendants reviewed and responded to the Millmans' loan modification. Defendants sent the Millmans a written response to their loan modification application dated July 25, 2017. *See Compl.* ¶ 11. The written response offered the Millmans a loan modification which they could accept by complying with a Trial Period Plan ("TPP"). *See* Pham Decl. ¶ 4, Exh. 1. The Millmans did not sign the TPP or make any of the payments required under the TPP. *See* Docket No. 36 at 10; *see also* Docket No. 41 at 5. Because The Millmans did not accept the TPP, Defendants proceeded with the foreclosure when the TRO expired on October 3, 2017. *See* Docket Nos. 21, 23. On October 16, 2017, the nonjudicial foreclosure trustee sold the Subject Property at a duly noticed trustee's sale. *See* Docket No. 41 at 5; RJN, Exh. P. On October 27, 2017, this Court denied the Millmans' motion to remand to state court, and denied Defendants' motion to dismiss without prejudice. *See* Docket No. 29. The Millmans subsequently filed a first amended complaint against the Defendants on November 8, 2017. *See* Docket No. 30. After the Defendants filed a second motion to dismiss on December 7, the Millmans voluntarily dismissed the Defendants on December 27, 2017. *See* Docket Nos. 32, 35.

Now, (i) Defendants seek to recover costs, in the form of attorney's fees, from the previous action under Federal Rule of Civil Procedure 41(d), and (ii) the Millmans move the court for an order for an award of $11,682.50 in attorney's fees pursuant to Cal. Civ. Code § 2924.12. *See* Docket No. 36; *see also* Docket No. 40 at 2.

### III. <u>DISCUSSION</u>

A. <u>Defendants' Motion for Attorney's Fees</u>

Defendants move for attorney's fees under Federal Rule of Civil Procedure 41(d).

1. <u>Legal Standard</u>

Federal Rule of Civil Procedure 41(d) allows a defendant to recover costs from the plaintiff if the plaintiff previously dismissed an action in any court, and then files an action based on or including the same claim against the same defendant:

> (d) *Costs of a Previously Dismissed Action.* If a plaintiff who

4

<blockquote>
previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.
</blockquote>

Fed. R. Civ. P. 41(d). Rule 41(d) endows federal courts with "broad discretion" to order stays and the payment of costs to deter "forum shopping and vexatious litigation." *Esquivel v. Arau*, 913 F.Supp. 1382, 1386 (C.D. Cal. 1996); *see also Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000) (stating that 41(d) is "intended to prevent attempts to gain any tactical advantage by dismissing and re-filing the suit"). "[T]he court should simply assess whether the plaintiff's conduct satisfies the [rule's] requirements" and grant the motion if "the circumstances of the case warrant an award ... to prevent prejudice to the defendant." *See Esquivel*, 913 F.Supp. at 1388. However, "costs have been imposed only in [sic] cases where the plaintiff has brought an identical, or nearly identical, claim and requested identical, or nearly identical, relief." *Garza v. Citigroup Inc.*, 311 F.R.D. 111, 114–115 (D. Del. 2015). To determine the scope of each of two successive claims and thus whether the second claim duplicates the first, the court must consider "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second [claim] were present . . . in the first." *NLRB v. United Technologies Corp.*, 706 F.2d 1254 (2nd Cir. 1983). In essence, courts must inquire whether the present claim might have been adjudicated based upon the facts involved in the first. *Id*.

    2.    <u>Applicability of Rule 41(d)</u>

At the outset, the Millmans, citing various Ninth Circuit cases, argue that Rule 41(d) is not applicable because the general rule in the Ninth Circuit is that "[i]n a diversity case, the availability of attorney fees is governed by state law." *See* Docket No. 41 at 5. However, the Millmans' reliance on Ninth Circuit case law is misplaced because the Ninth Circuit never adopted such a broad holding. In *Diamond v. John Martin Co.* (9th Cir. 1985) 753 F.2d 1465, 1467, upon which the Millmans rely, the Ninth Circuit addressed whether federal courts should follow state law, specifically Cal. Civ. Code § 1717, or Federal Rules of Civil Procedure Rule 54(d) in

5

assessing attorney's fees. The Ninth Circuit explained that federal courts are required to look at the relevant state law when determining the award attorneys' fees in diversity actions, and that where state law applied, the trial court could properly enforce state law rather than exercise its discretionary power under Rule 54(d). Unlike *Diamond*, the Millmans have not cited and relied upon any Californian statute for awarding attorney's fees. Thus, there is a basis for the Court to exercise its authority under the federal rules. Moreover, *Diamond* did not discuss the applicability of Rule 41(d) in particular.

Somewhat contradictory to their argument, the Millmans concede that "the procedure for requesting fees is governed by federal law." *Carnes v. Zamani* (9th Cir. 2007) 488 F.3d 1057, 1059; *see also* Docket No. 41 at 5. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, (2010) (Stevens, J., concurring) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). If there is a valid Federal Rule of Civil Procedure on point, a federal court sitting in diversity must apply the Federal Rule, "regardless of its incidental effect upon state-created rights." *Id.* at 410.

Accordingly, Rule 41(d) is applicable to this motion.[1] The next question turns on Defendants' entitlement to costs (in the form of attorney fees) under Rule 41(d).

3. Defendants' Entitlement under Rule 41(d)

Defendants argue that they are entitled to recover costs under Fed. R. Civ. P. 41(d) since the prior action, *Millman I*, contain the same claims and same parties as the present case at issue. In *Millman I*, the Millmans asserted five claims— (1) Violation of California Civil Code §§ 2924(a)(6) and 2923.55, (2) Cancellation of Instruments under California Civil Code § 3412, (3) Violation of California Business and Professions Code § 17200 et seq., (4) Declaratory Relief, and

---

[1] The Supreme Court held that "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity," federal courts apply a "two-step framework" to determine which law controls. *Id.* at 421. The framework "requires first, determining whether the federal and state rules can be reconciled (because they answer different questions), and second, if they cannot, determining whether the Federal Rule runs afoul of [the Rules Enabling Act, 28 U.S.C.] § 2072(b)." *Id.* at 410. The Court is not required to apply this framework since the Millmans did not point to any contradicting state law.

(5) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing. *See* RJN Exh. I. In this action (*Millman II*), the Millmans sued the same Defendants alleging two claims—(1) Declaratory Relief and (2) Violation of California Civil Code § 2923.6. *See* Docket No. 1-2. Thus, contrary to Defendants' arguments, a broad comparison reveals that there is only one identical claim in both actions—a claim for declaratory relief, but that is not a substantive claim. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) (The Declaratory Judgment Act's operation "is procedural only."); *see also Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir.1994) ("A declaratory judgment is not a theory of recovery."); *see e.g., Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir.1997) (Declaratory relief "merely offers an additional remedy to litigants."). The substantive legal claims in *Millman I* and *Millman II* do not overlap.

Moreover, the claims in *Millman I* and *Millman II* are based on different sets of operative facts: (i) in *Millman I*, the Millmans challenged the validity of the transfer of the deed of trust to the Defendants, and (ii) in the present action, Millmans sued the Defendants for failure properly to consider the loan modification application made after *Millman I* was dismissed. The facts and allegations in the current action could not have been raised in *Millman I* because they had not yet then occurred. The current suit involves a dispute over the loan modification application which the Millmans submitted to the Defendants on June 22, 2017, nearly three months after the dismissal of *Millman I*. *See* Docket No. 41 at 6.

Since the operative facts are different, and the Millmans presented different legal theories in the current action, the current action is different from *Millman I*. Defendants are thus not entitled to recover costs under Rule 41(d).[2]

---

[2] Defendants cite to (1) *Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996), and (2) *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951 (N.D. Cal. 2016), arguing the facts of this case are analogous to the above-mentioned cases, and this Court should follow the two district courts in finding that they are entitled to attorneys' fees under Rule 41(d). *See* Docket Nos. 36, 44. However in *Esquivel*, the plaintiffs asserted two concurrent actions (in separate districts in New York), and the claims were exactly the same. *See Esquivel v. Arau*, 913 F. Supp. 1382, 1387 (C.D. Cal. 1996). In *Van*, the plaintiff asserted "functionally indistinguishable" claims in both her state and federal court actions. *See Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951 at *3–4 (N.D. Cal. 2016). Thus, Defendants' arguments do not persuade.

The Court **DENIES** Defendants' motion for attorney's fees.[3]

B. <u>Millmans' Motion for Attorney's Fees</u>

1. <u>Legal Standard</u>

Here, the Millmans seek recovery of fees under Cal. Code Civ. Proc. § 2924.12. Cal. Civ. Code §§ 2924.12(h) permits award of reasonable attorneys' fees and costs to a "prevailing borrower" in an action challenging a foreclosure:

> A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

Cal. Civ. Code §§ 2924.12(h). A borrower is deemed to have "prevailed" if he or she "obtained injunctive relief or was awarded damages," and "injunctive relief" "plainly incorporates both preliminary and permanent injunctive relief." *Monterossa v. Sup.Ct. (PNC Bank, N.A.)* (2015) 237 Cal. App. 4th 747, 753 (2015).

2. <u>Whether a TRO Falls Within the Meaning of "Injunctive Relief"</u>

The question in this motion is whether obtaining a temporary restraining is equivalent to having obtained "injunctive relief" within the meaning of §§ 2924.12(h). Defendants argue that the plain language of the §§ 2924.12(h) demonstrates that "injunctive relief" can only mean a "permanent injunction" issued as part of a final judgment on the merits, and an ex parte temporary restraining order (TRO) is not "injunctive relief." *See* Docket No. 42 at 15, 17–20. However, the California Court of Appeal has held that "injunctive relief" "plainly incorporates both preliminary and permanent injunctive relief." *Monterossa v. Sup.Ct. (PNC Bank, N.A.)* (2015) 237 Cal. App.

---

[3] It is unclear whether attorney's fees are part of "costs" under Rule 41(d). While the Ninth Circuit is silent on this issue, several Circuit Court of Appeals (Third, Fourth, Sixth, and Seventh Circuit Courts) have all found that attorneys' fees are not part of costs. *See, e.g. Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 875–876 (6th Cir. 2000); *Garza v. Citigroup Inc.*, 881 F. 3d 277, 282–283 (3rd Cir. 2018); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000); *Andrews v. Am.'s Living Ctrs., LLC*, 827 F.3d 306 (4th Cir. 2016). *Cf. Esquivel v. Arau*, 913 F. Supp. 1382, 1391 (C.D. Cal. 1996) (The *Esquivel* Court reasoned that because Rule 41(a)(2) permits a court to condition voluntary dismissal without prejudice on payment of attorney fees, Rule 41(d) also ought to permit attorney fees, "it would be inconsistent to conclude that a court has discretion to condition Rule 41(a)(2) voluntary dismissal without prejudice on payment of attorney fees, but that a court does not have discretion to exact the same payment from a plaintiff who has noticed a Rule 41(a)(1) dismissal in a previous case.")

8

4th 747, 753 (2015). Thus, the question turns more precisely on whether a TRO in particular may be considered a form of "preliminary [sic] injunctive relief". *Id.* In *Monterossa*, the homeowners filed an ex parte application for a temporary restraining order and requested issuance of an order to show cause regarding a preliminary injunction. *Id.* at 749. The TRO was granted and a hearing set on the motion for a preliminary injunction. *Id.* at 749-750. The Court of Appeal held that interim awards could be an appropriate basis for a fee award appropriate and directing the trial court to consider the motion on its merits. *Id.* at 757-758. However, although *Monterossa* holds that attorney's fees may be awarded if a preliminary injunction is granted, it did not address whether such an award may be based on a TRO alone. *Id.*

It appears that whether obtaining TRO equates to obtaining "preliminary injunctive relief" remains a matter of first impression in California.

The Millmans cite two district courts, which have allowed attorney's fees when the plaintiff obtained a temporary restraining order. *See Lac v. Nationstar Mortg., LLC.*, 2016 U.S. Dist. Lexis 40633 (E.D. Cal. 2016); *see also Warren v. Wells Fargo & Co.*, 2017 U.S. Dist. Lexis 168346 at *18–19 (S.D. Cal. 2017) (finding Plaintiff to be the prevailing party entitled to fees, fees denied as unrelated to relief awarded). However, although the two district courts relied on *Monterossa* opinion to find that a TRO constitutes "preliminary injunctive relief", the *Monterossa* court never reached the question. Moreover, the plaintiffs in both cases obtained a TRO after a hearing whereas the Millmans here obtained an ex parte TRO, a process bearing little similarity to a preliminary injunction.

In any event, even if an ex parte TRO could provide a basis for fees, the Court declines to exercise its discretion to award attorney's fees here. The TRO was obtained ex parte without notice to Defendants; Defendants had not been served with the summons and complaint or noticed to appear in the action. *See* Docket No. 42 at 14. There was no adversarial hearing. Regardless of whether an award of fees under these circumstances might violate due process as Defendants contend, the Court will not award fees to the Millmans in this case. The Court **DENIES** the Millmans' motion for attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** both Defendants' motion for attorney's fees and the Millmans' motion for attorney's fees.

This order disposes of Docket Nos. 36 and 40.

**IT IS SO ORDERED**.

Dated: May 1, 2018

_____
EDWARD M. CHEN
United States District Judge